PILGRIM'S REST BAPTIST CHURCH v PEARSON

PILGRIM REST MISSIONARY BAPTIST CHURCH v MAYFIELD

Docket Nos. 318797 and 319571. Submitted April 15, 2015, at Grand
    Rapids. Decided April 23, 2015, at 9:00 a.m. Leave to appeal
    sought in Docket No. 318797.

In Docket No. 318797, Pilgrim's Rest Baptist Church, also known as
    Pilgrim Rest Missionary Baptist Church; Nathan Mayfield, and
    Stephon Blackwell brought an action in the Kent Circuit Court
    against Arthur Pearson, Sr. (the pastor of Pilgrim's Rest), seeking
    monetary damages related to Pearson's use of church funds.
    Pearson counterclaimed with numerous counts, including various
    contract claims, fraud, civil conspiracy, and intentional infliction
    of emotional distress. While the civil case proceeded, Pearson
    pleaded *nolo contendere* to a charge of embezzling more than
    $50,000 but less than $100,000 and was ordered to pay restitu-
    tion. Rifts and frictions developed within the church concerning
    Pearson's actions and whether his employment should be termi-
    nated. In Docket No. 319571, Pilgrim Rest Missionary Baptist
    Church, Jesse Osby, and others (all members who supported
    Pearson) brought a separate action in the Kent Circuit Court
    against Mayfield, Blackwell, and others who opposed Pearson.
    The court, Dennis B. Leiber, J., dismissed all the claims and
    counterclaims in both actions, concluding that they were not
    justiciable under the ecclesiastical abstention doctrine.

    The Court of Appeals *held*:

    1. On appeal, the parties addressed the merits of the claims
and counterclaims. To the extent that the claims are nonjustic-
iable, however, argument on the merits was irrelevant. To the
extent that the claims are justiciable, the trial court should be the
first to address the merits of the claims. Therefore, the only issue
necessary to address on appeal was whether the claims are
justiciable.

    2. The First and Fourteenth Amendments and Article 1, § 4 of
the Michigan Constitution severely circumscribe courts in their
resolution of disputes between a church and its members. A
court's jurisdiction is limited to property rights that can be

resolved by application of civil law. A court loses jurisdiction whenever it must stray into questions of religious doctrine or ecclesiastical polity. Religious doctrine refers to ritual, liturgy of worship, and tenets of the faith. Polity refers to the organization and form of government of the church. Under the ecclesiastical abstention doctrine, civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity.

3. The trial court properly dismissed Pearson's counterclaims. As pleaded, they referred to the employment contract between Pearson and the church. When a claim involves the provision of the very services for which the organization enjoys First Amendment protection, any contract for those services likely involves the organization's ecclesiastical policies and is outside the purview of civil law. Determining whether the board of trustees had the authority to suspend and eventually terminate Pearson would require determinations of religious polity, over which civil courts do not have jurisdiction. Additionally, Pearson's counterclaims involve the provision of his services as pastor to the church, which is the essence of the church's constitutionally protected function.

4. The claim against Pearson in Docket No. 318797 is justiciable. While the plaintiffs in that case did not expressly plead a tort, their pleadings for money damages imply conversion as the underlying tort. A conversion claim against an individual facially does not cause the court to stray into questions of religious doctrine or ecclesiastical polity and thereby lose jurisdiction. Because the claim would likely not require the trial court to determine the issue on the basis of religious doctrine or ecclesiastical polity, the claim is likely not barred by the ecclesiastical abstention doctrine. Additionally, Pearson failed to raise an affirmative defense that would necessarily entail an excursion into ecclesiastical polity. While Pearson claimed that the conversion action was barred under MCR 2.116(C)(7) because of a prior judgment, a restitution order as a condition of probation in a criminal case does not act as a bar to the recovery of damages in a civil action arising out of the same incident.

5. The claims of Pearson's supporters involved church membership, property rights of the members, and issues of control of the church. The state has an obvious and legitimate interest in the peaceful resolution of property disputes and providing a civil forum in which the ownership of church property can be determined conclusively. The First Amendment prohibits civil courts from resolving church property disputes on the basis of religious

doctrine and practice. Because Pilgrim's Rest is a strictly congregational or independent organization, governed solely within itself, the dispute is governed by the ordinary principles that govern voluntary associations. Therefore, unless the determination under the ordinary principles of voluntary associations would require interpretation of religious doctrine and polity, the trial court has jurisdiction to hear the claims brought by the pastor's supporters. However, if a defense to one of the claims would lead the court into questions of religious doctrine or ecclesiastical polity, the court will lose jurisdiction.

6. The claim of conversion brought by the pastor's opponents against the pastor's supporters in Docket No. 319571 was justiciable. The claim was for collecting funds in the name of the church, opening a bank account in the name of the church, and using those funds. In essence, the dispute is between two parties, each of which claims that it is the sole owner of the donations deposited into a bank account opened by the pastor's supporters. Because the claim would not require the trial court to determine the issue on the basis of religious doctrine or ecclesiastical polity, the claim is not barred by the ecclesiastical abstention doctrine. The trial court could easily resolve this question because it is a matter of determining to which donee the donor of the money intended to make the donation. This determination sounds entirely in property law and does not delve into questions of religious doctrine or ecclesiastical polity.

Affirmed in part, reversed in part, and remanded for further proceedings.

*Bernard C. Schaefer* for Pilgrim's Rest Baptist Church, Nathan Mayfield, and Stephon Blackwell in Docket No. 318797.

*Jerry L. Ashford* for Arthur Pearson, Sr., in Docket No. 318797.

*Schenk, Boncher & Rypma* (by *Frederick J. Boncher* and *Brent W. Boncher*) for Pilgrim Rest Missionary Baptist Church, Jessie Osby, and others in Docket No. 319571.

*Bernard C. Schaefer* for Nathan Mayfield, Mary Anne Beattie, Stephon Blackwell, and others in Docket No. 319571.

Before: METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM. In Docket No. 318797, defendant/
counterplaintiff-appellant/cross-appellee Arthur Pear-
son, Sr. (defendant Pearson) appeals the trial court's
October 7, 2013 order dismissing his counterclaims
under MCR 2.116(C)(8) for being nonjusticiable.
Plaintiffs/counterdefendants-appellees/cross-appellants
Pilgrim's Rest Baptist Church, Nathan Mayfield, and
Stephon Blackfield (plaintiffs) cross-appeal the same
order, which also dismissed their claims under MCR
2.116(C)(8) for being nonjusticiable. In consolidated
case Docket No. 319571, plaintiffs/counterdefendants-
appellants/cross-appellees and plaintiffs-appellants/
cross-appellees (collectively referred to as "pastor's sup-
porters") appeal the trial court's November 21, 2013
order that dismissed their claims under MCR
2.116(C)(8). The defendants-appellees/cross-appellants
and defendants/counterplaintiffs-appellees/cross-appel-
lants in the consolidated case (collectively referred to as
"pastor's opponents") cross-appeal the same order. We
affirm in part, reverse in part, and remand for further
proceedings.

Plaintiff Pilgrim's Rest Baptist Church is an ecclesi-
astical corporation. In 2011, defendant Pearson was the
pastor and president of Pilgrim's Rest. In April 2011, the
board of trustees and board of deacons became aware of
defendant Pearson's authorizing a raise for himself.
Between July 6, 2011, and October 13, 2011, defendant
Pearson admitted that on numerous occasions he gave
himself raises, used church credit cards for nonchurch
purposes, and paid himself monetary honorariums, all
without either board's approval or authorization.

After the October 13, 2011 meeting, plaintiffs Black-
well and Mayfield hired Plante Moran to analyze the

church finances. On Sunday, October 31, 2011, the board of trustees and the board of deacons gave public notice to the congregation of Pilgrim's Rest of the status of the investigation of defendant Pearson and of a November 13, 2011 vote to terminate his employment. At this vote, members had voted to retain defendant Pearson as pastor. When the accusations against defendant Pearson arose, the church members began to take sides and formed a pro-defendant Pearson faction and an anti-defendant Pearson faction.

On December 23, 2011, Plante Moran issued a preliminary finding report that demonstrated that, between 2008 and 2010, more than $237,000 had been removed from Pilgrim's Rest Baptist Church's bank accounts through questionable transactions. The majority of these transactions were for the benefit of defendant Pearson, his wife, and a former church secretary. On December 27, 2011, the board of trustees, allegedly exercising its right as board of directors, voted to suspend defendant Pearson with pay. On December 30, 2011, the Kent County Prosecutor's office authorized an arrest warrant for defendant Pearson on one count of embezzlement. Defendant Pearson later pleaded *nolo contendere* to a charge of embezzling more than $50,000 but less than $100,000 and was ordered to pay restitution.

On January 1, 2012, the pastor's supporters held a board of directors meeting, at which they claim the pastor's opponents maliciously tried to break up the vote for a board of directors. The pastor's opponents question the legitimacy of the board of directors that was voted in by the pastor's supporters. After this meeting, two boards of directors each began asserting that it was the legitimate board of directors.

The trial court concluded that all the claims from both cases were nonjusticiable under MCR 2.116(C)(8) because of the ecclesiastical abstention doctrine. On appeal, the parties address the merits of the claims. To the extent that the claims are nonjusticiable, the arguments on the merits are irrelevant. To the extent that the claims are justiciable, it is proper that the merits of those claims be addressed first by the trial court, and not this Court. Therefore, this Court will only address whether the claims are justiciable, and we will not address the merits of the claims.

"Whether subject-matter jurisdiction exists is a question of law for the court." *Dep't of Natural Resources v Holloway Constr Co*, 191 Mich App 704, 705; 478 NW2d 677 (1991). "Accordingly, the issue is reviewed de novo." *Id*.

"It is well settled that courts, both federal and state, are severely circumscribed by the First and Fourteenth Amendments to the United States Constitution and art 1, § 4 of the Michigan Constitution of 1963 in resolution of disputes between a church and its members." *Maciejewski v Breitenbeck*, 162 Mich App 410, 413-414; 413 NW2d 65 (1987). "Such jurisdiction is limited to property rights which can be resolved by application of civil law." *Id*. at 414. "Whenever the court must stray into questions of religious doctrine or ecclesiastical polity the court loses jurisdiction." *Id*. "Religious doctrine refers to ritual, liturgy of worship and tenets of the faith." *Id*. "Polity refers to organization and form of government of the church." *Id*. "Under the ecclesiastical abstention doctrine, apparently derived from both First Amendment religion clauses, 'civil courts may not redetermine the correctness of an interpretation of canonical text or some decision relating to government of the religious polity.' " *Smith v*

*Calvary Christian Church,* 462 Mich 679, 684; 614 NW2d 590 (2000), quoting *Paul v Watchtower Bible & Tract Society of New York, Inc,* 819 F2d 875, 878 n 1 (CA 9, 1987).

Defendant Pearson's counterclaims include breach of contract, promissory estoppel and unjust enrichment, fraud, tortious interference with a contract, intentional infliction of emotional distress, and civil conspiracy. But all of defendant Pearson's claims as pleaded refer to the employment contract between defendant Pearson and the church. We affirm the trial court's summary disposition of these claims. "When the claim involves the provision of the very services . . . for which the organization enjoys First Amendment protection, then any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Dlaikan v Roodbeen,* 206 Mich App 591, 593; 522 NW2d 719 (1994).

Defendant Pearson relies on *Vincent v Raglin,* 114 Mich App 242; 318 NW2d 629 (1982), for the proposition that if it was not the "action of the church" at issue, the ministerial exception and ecclesiastical abstention doctrine are inapplicable. Defendant Pearson's reliance on *Vincent* is misplaced because the Court in *Vincent* simply determined whether the church had taken a certain course of action, and here the determination would be whether the church exceeded its authority in acting, which is nonjusticiable because it would require the court to determine if the church violated its own policy.

Therefore, because determining whether the board of trustees had the authority to suspend and eventually terminate defendant Pearson would require determinations of religious polity, the civil courts do not have jurisdiction. Additionally, the claims brought by

defendant Pearson involve the provision of his services as pastor to the church, which is the essence of the church's constitutionally protected function, and "any claimed contract for such services likely involves its ecclesiastical policies, outside the purview of civil law." *Dlaikan*, 206 Mich App at 593. The trial court's grant of summary disposition is affirmed in regard to defendant Pearson's counterclaims.

Plaintiffs plead no express tort, but the pleadings for money damages seem to imply conversion as the underlying tort by which plaintiffs request money damages. A claim of conversion against an individual facially does not cause the court to "stray into questions of religious doctrine or ecclesiastical polity," which is where the court would lose jurisdiction. *Maciejewski*, 162 Mich App at 414. Because the claim likely does not require the trial court to determine the issue on the basis of religious doctrine or ecclesiastical polity, the claim is likely not barred by the ecclesiastical abstention doctrine. Additionally, defendant Pearson has failed to raise an affirmative defense that "necessarily entails an excursion into ecclesiastical polity." *Dlaikan*, 206 Mich App at 594. Therefore, plaintiffs' claim for conversion is justiciable.

Additionally, defendant Pearson's claim that plaintiffs' civil action is barred by a prior judgment is an incorrect statement of law. "A restitution order as a condition of probation pursuant to MCL 771.3(2)(d); MSA 28.1133(2)(d) in a criminal case does not act as a bar to the recovery of damages in a civil action arising out of the same incident." *Aetna Cas & Surety Co v Collins*, 143 Mich App 661, 663; 373 NW2d 177 (1985). Therefore, summary disposition would not be proper on the ground of a prior judgment, MCR 2.116(C)(7),

because an order of restitution does not prohibit plaintiffs from filing a civil action.

The claims of the pastor's supporters involve membership, property rights of the members, and issues of control of the church. "The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where the ownership of church property can be determined conclusively." *Jones v Wolf*, 443 US 595, 602; 99 S Ct 3020; 61 L Ed 2d 775 (1979). "[T]he First Amendment prohibits civil courts from resolving church property disputes on the basis of religious doctrine and practice." *Id*. Pilgrim's Rest is a "strictly congregational or independent organization, governed solely within itself . . . ." *Watson v Jones*, 80 US (13 Wall) 679, 724; 20 L Ed 666 (1871). Since it is a congregational or independent organization, "the dispute is governed ' "by the ordinary principles which govern voluntary associations[.]" ' " *Chabad-Lubavitch of Mich v Schuchman*, 305 Mich App 337, 351; 853 NW2d 390 (2014), quoting *Bennison v Sharp*, 121 Mich App 705, 714; 329 NW2d 466 (1982), quoting *Watson*, 80 US at 725 (alteration in original). "In such cases where there is a schism which leads to a separation into distinct and conflicting bodies, the rights of such bodies to the use of the property must be determined by the ordinary principles which govern voluntary associations." *Watson*, 80 US at 725.

Therefore, unless the determination under the ordinary principles of voluntary associations would require interpretation of religious doctrine and religious polity, the court has jurisdiction to hear the claims brought by the pastor's supporters. However, if a defense to one of the claims leads the court to "stray into questions of

religious doctrine or ecclesiastical polity," the court loses jurisdiction. *Maciejewski*, 162 Mich App at 414.

The pastor's opponents brought a claim of conversion against the pastor's supporters for collecting funds in the name of the church, opening a bank account in the name of the church, and using those funds. In essence, this is a claim between two parties, each of which claims that it is the sole owner of approximately $14,623.46 worth of donations that have been deposited into a bank account opened by the pastor's supporters. Because the claim does not require the trial court to determine the issue on the basis of religious doctrine or ecclesiastical polity, the claim is not barred by the ecclesiastical abstention doctrine. The trial court could easily resolve this question because it is a matter of determining to which donee the donor of the money intended to make the donation. This determination sounds entirely in property law and does not delve into questions of religious doctrine or ecclesiastical polity, and therefore, the claim is justiciable.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. In Docket No. 318797, plaintiffs may tax costs. In Docket No. 319571, no costs, no party having prevailed in full.

METER, P.J., and SAWYER and BOONSTRA, JJ., concurred.